Commonwealth *v.* Owens, Appellant.

Argued April 29, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

522

*Harold Yaskin*, Assistant Defender, with him *John W. Packel*, Assistant Defender, and *Vincent J. Ziccardi*, Defender, for appellant.

*Joseph D. Grano*, Assistant District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, October 12, 1971:

On December 20, 1968, James Owens, the appellant, was arrested for robbery. Appellant was tried on April 11, 1969 before Judge EDMUND B. SPAETH, JR., sitting without a jury, on indictments charging aggravated robbery and corrupting the morals of a minor. He was found guilty of aggravated robbery and a demurrer was sustained to the indictment charging corrupting the morals of a minor. Post-trial motions were argued and denied, and a sentence of from two to eight years was entered. The Superior Court affirmed per curiam, with two Judges dissenting. We granted allocatur.

The evidence presented at trial showed that on December 20, 1968, one George Haines was attacked and robbed of his money, hat and gloves by a group of boys. Haines could not identify his attackers, but the Commonwealth produced Elmer McBride, a part-time cab driver and Government security officer, who witnessed the entire incident from his parked cab nearby. McBride made a positive identification of the appellant. McBride testified that after appellant and his cofelons had committed the crime, they walked directly in front of his cab. A few seconds later, a police car arrived with two police officers. McBride personally assisted in apprehending appellant, and testified that he never lost sight of him from the time of the robbery until he was apprehended. McBride's testimony on how appellant was apprehended was corroborated by the two arresting police officers.

Appellant took the stand and testified that he was leaving a bar when he was stopped by McBride. He further testified that he was on his way to meet two girls—one his girlfriend—whom he had sent out to find another young man.* After appellant had testified, the Commonwealth moved for a continuance to obtain rebuttal witnesses. Defense counsel objected, and Judge SPAETH, in denying the request for a continuance, said, "I am prepared to decide it." Judge SPAETH then asked for closing arguments and, after hearing them, found appellant guilty of aggravated robbery.

The sole issue is whether the above statement indicated that the lower Court had in effect decided that appellant was guilty prior to the completion of the trial, thereby destroying his presumption of innocence and shifting to appellant the burden of proof.

---

* One of the girls took the stand and related a substantially different story from that given by appellant.

In *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A. 2d 441, we pertinently said (page 229): "In criminal cases there is a continuing presumption of innocence which does not exist in civil cases. Hence, in the latter, although the original burden is upon the plaintiff, the duty of producing evidence may shift from side to side. In a criminal case this situation cannot exist. It is the presumption of innocence which prevents it. The presumption of innocence grew up as a policy of law and is not based upon probabilities at all.\* It represents the law's humane approach to the solution of a dispute which may result in the loss of life or liberty. Because of this concern the law has ordained that any government which seeks to take from any person his life or liberty has the burden of proving justification for doing so. It is the continuing presumption of innocence which is the basis for the requirement that *the state has a never-shifting burden to prove guilt beyond a reasonable doubt.*\*\* Commonwealth v. Holgate, 63 Pa. Superior Ct. 246. Since this presumption is with the defendant not only at the beginning of the trial but throughout all its stages, and even while the jury is considering the verdict, it is obvious that no contrary presumption can be indulged."

In *Commonwealth v. McNair,* 208 Pa. Superior Ct. 369, 222 A. 2d 599, the Superior Court said (page 371): " 'A defendant surrenders none of his substantive rights when he is tried by a judge without a jury under the Act of 1935, and the trial judge is required to give consideration to, and is bound by, the same legal principles as a jury.' " See also *Commonwealth v. Richman,* 132 Pa. Superior Ct. 529, 1 A. 2d 578. While there

---

\* "Certainly it cannot be said that all or nearly all indicted persons are innocent. That would fly directly in the face of experience."

\*\* Italics, ours.

are no fundamental differences in a defendant's rights or the legal principles involved between a jury case and a nonjury case, we review the effect of remarks made at a trial in a jury case from a different perspective as opposed to a nonjury case.

In *Commonwealth v. Horn*, 186 Pa. Superior Ct. 429, 140 A. 2d 847, the Superior Court succinctly and aptly pointed out this difference (page 435) : "Although the same rules of evidence apply to a trial without a jury as to one with a jury, the examination of the records by an appellate court differs in certain respects. In a trial with a jury, a judge's remarks are scrutinized primarily for the purpose of determining their effect upon a jury. In a trial by a judge without a jury, the judge's remarks are examined to determine whether they indicate that the judge is so prejudiced or biased that his mind is not open to conviction by the last evidence presented. In the one case we are interested in the effect of the remark on the minds of the jury, in the other case we are interested in what it establishes to be in the mind of the judge."

We must therefore review Judge SPAETH's remark in the context of the entire trial to see if he was "so prejudiced or biased that his mind [was] not open to conviction by the last evidence presented."

In his Memorandum Opinion, Judge SPAETH said that after hearing *all* of the evidence on both sides as well as the arguments of counsel, he did not believe appellant's story and he was convinced of defendant's guilt beyond a reasonable doubt. After carefully studying the entire record, we are convinced that Judge SPAETH was not prejudiced or biased, and appellant is not entitled to a new trial.

Judgment of sentence affirmed.

Mr. Justice JONES and Mr. Justice ROBERTS concur in the result.