J-A10038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS LOWMAN | : | |
| | : | |
| Appellant | : | No. 603 EDA 2018 |

Appeal from the Judgment of Sentence January 12, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005134-2016

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.E.:                **FILED JULY 18, 2019**

Appellant, Nicholas Lowman, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for robbery, conspiracy to commit aggravated assault, and intimidation of a witness or victim.[1]  We affirm Appellant's convictions but vacate and remand for resentencing.

In its opinion, the trial court accurately set forth the relevant facts and procedural history of this case as follows:

> On February 26, 2016, at approximately 12:40 A.M., on the south side of the 5300 block of Woodland Avenue, a verbal and physical altercation occurred between [Appellant] and [V]ictim…outside of Charlie's bar.  [Appellant] confronted and accused [Victim] of divulging information to law enforcement officials on a legal case involving a family friend

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii); 903 (section 2702(a)(1) related); and 4952(a)(1), respectively.

in another jurisdiction. [Appellant] then organized and directed other individuals from inside the bar to drag [Victim] outside, chase him as he tried to flee, intimidate and severely beat him. [Victim] was stripped of all clothing and belongings and made to walk naked down Woodland Avenue. Sergeant Davis investigated and found a video recording of the altercation made available for public viewing on the Snapchat social media application by the [c]odefendant. In the alleyway of Charlie's Bar, police officers recovered [V]ictim's left boot and a pair of underwear. Police officers also recovered a broken pool stick near the incident and documented images of facial injuries to [Victim's] left eye. After the altercation, [Victim] was missing $175 in U.S. currency, his Pennsylvania photo identification, and his welfare benefits card. Upon the execution of a search warrant, police officers also recovered the blue and white striped shirt seen on [Appellant] in his bedroom at [Appellant's] residence. [Victim] failed to timely notify law enforcement officers of the altercation because he testified feeling threatened and scared to do so after the incident.

[Appellant] appeared before the [court] on August 30, 2017, and was charged with Aggravated Assault, Robbery, threat of immediate serious injury, Conspiracy to Commit Aggravated Assault, Retaliation Against a Witness or Victim, and Intimidation of a Witness or Victim. On [September 1, 2017], [Appellant] was found guilty by a jury of Robbery, threat [of] immediate serious injury, Conspiracy to Commit Aggravated Assault, and Intimidation of a Witness or Victim, and was sentenced [on January 12, 2018], to an aggregate twenty to forty years in state custody.[2]

[Appellant] then filed his Notice of Appeal on February 4, 2018, and later filed his Statement of [Errors] complained of on appeal on May 18, 2018 [following an extension].

(Trial Court Opinion, filed July 16, 2018, at 1-2) (internal citations omitted).

_____

[2] Specifically, the court sentenced Appellant to concurrent terms of 10 to 20 years' imprisonment on the conspiracy and robbery convictions and a consecutive 10 to 20 years' imprisonment for the intimidation conviction.

Appellant raises six issues for our review:

1. WAS NOT THE EVIDENCE AT TRIAL INSUFFICIENT TO ESTABLISH THE CHARGES OF ROBBERY AND CONSPIRACY?

2. WAS NOT THE EVIDENCE AT TRIAL INSUFFICIENT TO ESTABLISH ROBBERY AS A FIRST DEGREE FELONY, OR OF CONSPIRACY TO COMMIT ANY DEGREE OF AGGRAVATED ASSAULT IN THAT THERE WAS NO EVIDENCE THAT [VICTIM] SUFFERED SERIOUS BODILY INJURY, OR THAT [APPELLANT] ATTEMPTED TO CAUSE SERIOUS BODILY INJURY TO [VICTIM]?

3. WAS NOT THE EVIDENCE INSUFFICIENT TO ESTABLISH INTIMIDATION OF A WITNESS OR VICTIM, SINCE [VICTIM] WAS NEITHER A VICTIM NOR A WITNESS IN A PRIOR CRIMINAL MATTER?

4. DID NOT THE TRIAL COURT ERR IN DETERMINING THAT INTIMIDATION SHOULD BE GRADED AS A FELONY OF THE FIRST DEGREE, AFTER THE JURY SPECIFICALLY DETERMINED, IN AN INTERROGATORY, THAT THE MOST SERIOUS OFFENSE CHARGED IN THE CASE ABOUT WHICH [APPELLANT] SOUGHT TO INFLUENCE OR INTIMIDATE A WITNESS WAS NOT A FELONY OF THE FIRST DEGREE?

5. WAS NOT THE SENTENCE OF 10 TO 20 YEARS ON THE INTIMIDATION OF A WITNESS CHARGE AN ILLEGAL SENTENCE, IN THAT, AS A RESULT OF THE JURY'S DETERMINATION THAT THE OBJECT OF THE INTIMIDATION WAS NOT A FIRST DEGREE FELONY, THE GRADING OF THE INTIMIDATION CHARGE COULD BE NO MORE THAN A SECOND DEGREE MISDEMEANOR?

6. DID NOT THE SENTENCING COURT ABUSE ITS DISCRETION IN SENTENCING [APPELLANT] TO 20 TO 40 YEARS, A SENTENCE WHICH GROSSLY EXCEEDED THE SENTENCING GUIDELINES AND IN SENTENCING [APPELLANT] TO A CONSECUTIVE 10 TO 20 YEARS ON THE INTIMIDATION OF A WITNESS CHARGE, WHEN THE MAXIMUM POSSIBLE SENTENCE COULD BE NO MORE THAN 1-2 YEARS?

(Appellant's Brief at 4).

In his first issue, Appellant argues he was merely present at the crime scene. Appellant asserts that Sergeant Davis testified Appellant was visible on the Snapchat video with his hands in his pocket. Appellant maintains Sergeant Davis did not testify about any actions Appellant took to commit the crimes at issue. Appellant concedes he told Detective DeRose that he might have assisted with removing Victim's clothing, but Appellant insisted he was only "playing with the guy." Appellant contends there was no other evidence that he took anything from Victim or assaulted Victim. Appellant concludes his mere presence at the crime scene was insufficient to support his convictions, and this Court must reverse. We disagree.

Preliminarily:

> [W]e observe generally that issues not raised in a Rule 1925(b) statement will be deemed waived for review. An appellant's concise statement must properly specify the error to be addressed on appeal. In other words, the Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal. A concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all. The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver.

*Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (internal citations and quotation marks omitted).

Instantly, Appellant raised three specific challenges to the sufficiency of the evidence in his Rule 1925(b) statement. Nevertheless, Appellant did not

preserve his "mere presence" argument in any of these claims. (**See** Rule 1925(b) Statement, filed 5/18/18, at 2; R.R. at 13). Appellant's omission of this claim of error deprived the court of an opportunity to address it in the court's Rule 1925(a) opinion. Thus, Appellant's first issue is waived. **See Hansley, supra**.

With respect to Appellant's second and third issues, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Mia R. Perez, we conclude these claims merit no relief. The trial court opinion comprehensively discusses and properly disposes of these issues. (**See** Trial Court Opinion at 2-7) (finding: **(issue 2)**[3] Commonwealth presented evidence that Appellant and his cohorts physically outnumbered Victim, who was unable to flee or defend himself due to size and strength of Appellant and his cohorts; Appellant willfully provoked, organized, and directed others to beat and humiliate Victim by stripping Victim of his clothing and belongings; Appellant called Victim "rat" and told Victim to "stop telling on people"; Appellant showed little remorse for his actions or regard for human dignity during attack on Victim; video evidence demonstrated Appellant's intent to inflict serious bodily injury on Victim; evidence was sufficient to sustain Appellant's robbery and conspiracy to

_____

[3] Notwithstanding some of the trial court's mistaken citations to the notes of testimony regarding the evidence presented, the record supports the court's sufficiency analysis.

commit aggravated assault convictions; **(issue 3)** during assault, Appellant and his cohorts repeatedly called Victim "rat" and directed him to "stop telling on people," demonstrating Appellant's attempt to intimidate and instill Victim with fear; evidence showed Appellant intimidated Victim to prevent Victim from reporting assault to law enforcement; Victim testified he was scared to report crime; court observed Victim's fear and terror; evidence was sufficient to sustain Appellant's intimidation conviction[4]). Therefore, we affirm on the basis of the trial court's opinion as to issues two and three.

For purposes of disposition, we combine Appellant's fourth and fifth issues. Appellant asserts the jury verdict sheet contained a specific interrogatory on whether the most serious offense charged, related to the intimidation of a witness or victim, was a felony of the first degree. Appellant contends the jury expressly answered "no" to that question. In light of the jury's finding, Appellant argues his intimidation conviction must be graded as a second-degree misdemeanor. Appellant complains the court "corrected" the grading of Appellant's intimidation conviction to a first-degree felony after the jury announced its verdict. Appellant concedes defense counsel did not object

---

[4] We decline Appellant's invitation to hold that the intimidation of a witness or victim statute cannot apply to the victim of a current crime and instead applies only to a victim or witness of a crime that already took place. Appellant cites no law to support this position. In any event, the evidence here demonstrated Appellant's and his cohorts' dual purpose to punish Victim for his suspected assistance with law enforcement concerning a criminal case in another jurisdiction **and** to deter Victim from any future contact with the police regarding the current or any future crimes.

to this "correction." Nevertheless, Appellant maintains the court had no authority to overrule the jury's express factual finding. Appellant emphasizes that the court's action increased Appellant's sentencing exposure ten-fold. Appellant suggests the 10 to 20 year sentence for his intimidation conviction graded as a first-degree felony constitutes an illegal sentence. Appellant submits defense counsel's acquiescence to the court's grading "correction" cannot constitute waiver where the sentence imposed is illegal. Appellant concludes his sentence is illegal, and this Court must vacate and remand for resentencing of his intimidation of a witness or victim conviction as a second-degree misdemeanor. We agree relief is due.

"A claim that the court improperly graded an offense for sentencing purposes implicates the legality of a sentence." *Commonwealth v. Mendozajr*, 71 A.3d 1023, 1027 (Pa.Super. 2013) (quoting *Commonwealth v. Pantalion*, 957 A.2d 1267, 1271 (Pa.Super. 2008)). *See also Commonwealth v. Felder*, 75 A.3d 513 (Pa.Super. 2013), *appeal denied*, 624 Pa. 671, 85 A.3d 482 (2014) (construing challenge to grading of intimidation of witness or victim conviction as challenge to legality of sentence). When examining a challenge to the legality of a sentence, our scope and standard of review is as follows:

> A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. When the legality of a sentence is at issue on

appeal, our standard of review is *de novo* and our scope of review is plenary.

***Mendozajr, supra*** (quoting ***Commonwealth v. Catt***, 994 A.2d 1158, 1160 (Pa.Super. 2010) (*en banc*)) (internal citations and quotation marks omitted).

***See also Commonwealth v. Berry***, 877 A.2d 479 (Pa.Super. 2005) (*en banc*), *appeal denied*, 591 Pa. 688, 917 A.2d 844 (2007) (assuming court's jurisdiction is proper, challenges to legality of sentence are not subject to waiver).

The Crimes Code provides the following grading scheme for the crime of intimidation of a witness or victim:

### § 4952. Intimidation of witnesses or victims

\* \* \*

**(b) Grading.**—

(1) The offense is a felony of the degree indicated in paragraphs (2) through (4) if:

(i) The actor employs force, violence or deception, or threatens to employ force or violence, upon the witness or victim or, with the requisite intent or knowledge upon any other person.

(ii) The actor offers any pecuniary or other benefit to the witness or victim or, with the requisite intent or knowledge, to any other person.

(iii) The actor's conduct is in furtherance of a conspiracy to intimidate a witness or victim.

(vi) The actor accepts, agrees or solicits another to accept any pecuniary or other benefit to intimidate a witness or victim.

(v)   The actor has suffered any prior conviction for any violation of this section or any predecessor law hereto, or has been convicted, under any Federal statute or statute of any other state, of an act which would be a violation of this section if committed in this State.

(2)    The offense is a felony of the first degree if a felony of the first degree or murder in the first or second degree was charged in the case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.

(3)    The offense is a felony of the second degree if a felony of the second degree is the most serious offense charged in the case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.

(4)    The offense is a felony of the third degree in any other case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.

(5)    Otherwise the offense is a misdemeanor of the second degree.

18 Pa.C.S.A. § 4952(b).

Subsection 4952(b) provides a clear roadmap for the grading of witness/victim intimidation offenses.  If a felony of the first-degree was charged in the case, then the offense of witness/victim intimidation is graded as a first-degree felony.  If the most serious offense charged in the case was a second degree felony, then the witness/victim intimidation offense is graded as a second-degree felony.  If no first-degree or second-degree felony was charged in the case, but the criminal defendant nevertheless sought to influence or intimidate a witness or victim in any manner described in subsection 4952(b)(1), then the witness/victim intimidation offense is graded as a third-degree felony.  In all other cases, the offense of witness/victim intimidation is graded as a second-degree misdemeanor.

**Felder, supra** at 516-17 (internal citations omitted).  "[T]he statute's focus

on the most serious crime charged makes eminent sense, since the relevant charge is the most serious one a criminal defendant attempted to escape by use of intimidation." *Id.* at 517.

Instantly, the verdict sheet contained the following interrogatory: "If you entered GUILTY for INTIMIDATION OF A WITNESS OR VICTIM, do you find that the most serious offense charged in the case in which the defendant sought to influence or intimidate a witness was a felony of the first degree?" (Verdict Sheet, dated 9/1/17, at 1). The jury circled the answer "NO." (*Id.*) Importantly, the verdict sheet did not ask the jury to decide the grade of the offense found tied to the intimidation of a witness or victim charge, such as whether it was a second-degree or third degree felony, or a misdemeanor. After the verdict was recorded, the trial court had a discussion with counsel, and stated that the jury's specific finding was erroneous, because the jury convicted Appellant of only first-degree felonies. Consequently, the court purported to "correct" the grading of the intimidation conviction to a first-degree felony.[5]

---

[5] The trial court interprets Appellant's claims as challenging the underlying convictions rather than the legality of the sentences for those convictions. In **Commonwealth v. Spruill**, 622 Pa. 299, 80 A.3d 453 (2013), the issue before the appellate Court was whether the trial court erred by convicting the appellee of aggravated assault graded as a second-degree felony where the Commonwealth charged her with aggravated assault as a first-degree felony. In **Commonwealth v. Shamsud-Dim**, 995 A.2d 1224 (Pa.Super. 2010), the issue was whether the trial court erred by convicting the appellant of simple assault as a third-degree misdemeanor where: the Commonwealth had not

Nevertheless, any ambiguity in the verdict should be construed in favor of Appellant. *See generally Commonwealth v. Riley*, 811 A.2d 610 (Pa.Super. 2002) (holding jury's general conspiracy verdict must be resolved in favor of defendant and construed only as conviction of conspiracy to commit **least** serious underlying offense). Given this record, we cannot say with clarity whether the jury convicted Appellant of intimidation of a witness or victim because Appellant intimidated Victim not to report the current assault, or because Appellant intimidated Victim so he would stop cooperating with authorities in the matter concerning one of Appellant's friends in another jurisdiction.

Further, when charging the jury on intimidation, the court stated that aggravated assault is a felony of the first degree but did not inform the jury of the grading of the other offenses charged in this case. We should not

_____

charged the appellant with that offense as a third-degree misdemeanor and simple assault as a third-degree misdemeanor was not a lesser included offense to any of the charges before the trial court. In each case, the reviewing Courts considered the issues as challenges to the respective convictions, which required specific and timely objections to avoid waiver. In both **Spruill** and **Shamsud-Dim**, the remedy for each complaint would have been an arrest of judgment for the challenged conviction.

Here, Appellant claims the sentence on his intimidation conviction was illegal because the court improperly graded that offense as a first-degree felony in contravention of the jury's express finding on the special interrogatory. As well, Appellant does not seek an arrest of judgment for this conviction; instead, Appellant complains about the sentence. Therefore, **Spruill** and **Shamsud-Dim** are inapposite, and the trial court erred in relying on those cases to define and decide Appellant had waived his issues.

speculate on what the jury had in mind when it answered the special interrogatory. *See Commonwealth v. Jones*, 378 A.2d 1245 (Pa.Super. 1977) (explaining appellate court should not try to analyze thinking process of jury and speculate on basis of verdict).

In light of the incomplete verdict sheet, the jury charge on intimidation, and the different theories of intimidation pursued at trial, the best resolution of this case is to reduce the grading of the intimidation conviction to the least grading as a second-degree misdemeanor. *See Commonwealth v. Weimer*, 167 A.3d 78 (Pa.Super. 2017), *appeal denied*, 644 Pa. 336, 176 A.3d 838 (2017) (reducing grading of appellant's unlawful contact with minor conviction to default third-degree felony; court did not charge jury on specific offense for which appellant was accused of contacting victim; thus, this Court could not know most serious offense underlying unlawful contact of minor for purposes of grading, and trial court would have had to guess what crime appellant sought to commit when he contacted minor, which is neither permitted nor intended under statute). Notably, the Commonwealth does not oppose resentencing Appellant on the intimidation conviction, graded as a second-degree misdemeanor pursuant to Section 4952(b)(5). (*See* Commonwealth's Brief at 24). Moreover, we cannot ignore the ramifications associated with the improper grading of this offense for sentencing. *See, e.g.,* 204 Pa.Code § 303.15 (dictating offense gravity score and prior record points associated with offenses; misdemeanor offenses carry different offense gravity score and

prior record point value than felony offenses). Accordingly, we affirm Appellant's convictions, but we vacate the entire judgment of sentence and remand for resentencing.[6] **See Commonwealth v. Bartrug**, 732 A.2d 1287 (Pa.Super. 1999), *appeal denied*, 561 Pa. 651, 747 A.2d 896 (1999) (holding sentencing error in multi-count case normally requires appellate court to vacate entire judgment of sentence so trial court can restructure its sentencing scheme on remand).

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/19

---

[6] Due to our disposition, we do not need to address Appellant's sixth issue on appeal, challenging the discretionary aspects of sentencing.

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

**FILED**

2018 JUL 16 PM 3: C

OFFICE OF JUDICIAL RECO
CRIMINAL DIVISION
FIRST JUDICIAL DISTRIC
OF PENNSYLVANIA.

COMMONWEALTH OF PENNSYLVANIA    :    CP-51-CR-5134-2016
                                :
vs.                             :
                                :
NICHOLAS LOWMAN                  :

**OPINION**

Perez, J.

CP-51-CR-0005134-2016 Comm. v. Lowman, Nicholas
Opinion



8136913001

## PROCEDURAL AND FACTUAL HISTORY

On February 26, 2016, at approximately 12:40 AM, on the south side of the 5300 block of Woodland Avenue, a verbal and physical altercation occurred between the Defendant, Nicholas Lowman, and the victim, Mark Epps, outside of Charlie's Bar. The Defendant confronted and accused Mr. Epps of divulging information to law enforcement officials on a legal case involving a family friend in another jurisdiction. Notes of Testimony, 8/30/17 at 128. The Defendant then organized and directed other individuals from inside the bar to drag Mr. Epps outside, chase him as he tried to flee, intimidate and severely beat him. Id., at 91-92. Mr. Epps was stripped of all clothing and belongings and made to walk naked down Woodland Avenue. Id., at 131. Sergeant Davis investigated and found a video recording of the altercation made available for public viewing on the Snapchat social media application by the Codefendant. Id., at 47. In the alleyway of Charlie's Bar, police officers recovered the victim's left boot and a pair of underwear. Notes of Testimony, 9/1/2017 at 30. Police officers also recovered a broken pool stick near the incident, and documented images of facial injuries to Mr. Epps's left eye. Id., at 39. After the altercation,

Epps was missing $175 in U.S. currency, his Pennsylvania photo identification, and his welfare benefits card. Id., at 55. Upon the execution of a search warrant, police officers also recovered the blue and white striped shirt seen on the Defendant in his bedroom at the Defendant's residence. Id., at 83. Mr. Epps failed to timely notify law enforcement officers of the altercation because he testified feeling threatened and scared to do so after the incident. Notes of Testimony, 8/31/17 at 18.

The Defendant appeared before the Honorable Mia. R. Perez on August 30, 2017, and was charged with Aggravated Assault, Robbery, threat of immediate serious injury, Conspiracy to Commit Aggravated Assault, Retaliation Against a Witness or Victim, and Intimidation of a Witness or Victim. On September 1, 2017 the Defendant was found guilty by a jury of Robbery, threat for immediate serious injury, Conspiracy to Commit Aggravated Assault, and Intimidation of a Witness or Victim, and was sentenced on January 12, 2018 to an aggregate of twenty to forty years in state custody.

The Defendant then filed his Notice of Appeal on February 4, 2018, and later filed his Statement of Matters complained of on appeal on May 18, 2018.

This trial court opinion follows.

**Standard of Review**

1. *Sufficiency of the Evidence*

The standard of review for sufficiency of the evidence is well settled in *Commonwealth v. Kearney:*

> ...whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the

above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

Commonwealth v. Kearney, 92 A.3d 51, 64 (Pa. Super Ct. 2014).

### 2. *Excessive Sentencing*

Under 42 Pa.C.S.A. § 9781, a court can vacate a sentence and remand for resentencing if:

> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

> *See* 42 Pa.C.S.A. § 9781.

Under this standard "...the Superior Court is required to vacate sentences that are outside of the Sentencing Guidelines if they are 'unreasonable,' and is also required to vacate sentences within the Sentencing Guidelines if they are 'clearly unreasonable.'" *See* Commonwealth. v. Mouzon, 812 A.2d 617, 625 (Pa. 2002). It is also well settled that the statutory Sentencing Guidelines are solely advisory in nature and are only one factor among many that the court must consider when imposing a sentence. *See* Commonwealth v. Sessoms, 516 Pa. 365, 532 A.2d 775 (1987).

## LEGAL ANALYSIS

*1. Sufficiency of Evidence Claims*

**Robbery and Conspiracy to Commit Aggravated Assault**

The Defendant asserts in claims (a) and (b) that this Court erred in finding him guilty of Robbery and Conspiracy to Commit Aggravated Assault because it did not have sufficient evidence demonstrating that the Defendant's acts caused serious bodily injury. The Commonwealth met its evidentiary burden in proving beyond a reasonable doubt that the Defendant attempted to cause serious bodily injury to Mr. Epps, pursuant to 18 Pa.C.S.A. § 2301.

Serious bodily injury is defined as: "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *See* 18 Pa.C.S.A. § 2301.

Serious bodily injury need not itself be life-threatening; it is the conduct giving rise to the inference that the Defendant intended to cause serious bodily injury that is applicable and significant. *See* Commonwealth v. Rodriquez, 449 Pa. Super. 319, 673 A.2d 962 (1996) (holding that the evidence that defendant and two other men punched and kicked lone victim while victim was on ground, stopping only when police officer arrived, was sufficient to support defendant's conviction for aggravated assault).

"In order to find Defendant guilty of aggravated assault... the jury had to examine two elements under 18 Pa.C.S. §2702(a)(1) in determining Defendant's culpability: first, Defendant had attempted to cause serious bodily injury to the victim; and second, Defendant had acted with the requisite intent to cause such injury." *See* Commonwealth v. Craig, No. 1332OF2004, 2005 WL 5798236 (Pa. Com. Pl. 2005), affd, 953 A.2d 596 (Pa. Super. Ct. 2008).

There are four basic factors to consider for whether the intent to inflict serious bodily injury was present: the evidence of a significant difference in size or strength between the

defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. *See* Commonwealth v. Alexander, 477 Pa. 190, 194, 383 A.2d 887, 889 (1978). This Court will now establish how the evidence presented by the Commonwealth satisfied the test in *Alexander* for whether the intent to inflict serious bodily injury was present.

Under the first prong of the *Alexander* test, the Commonwealth sufficiently established a significant difference in size and strength between the defendant and the victim, because Mr. Epps was physically outnumbered by more than one individual and could not possibly avoid confrontation. Notes of Testimony, 8/31/17 at 26-27. The Defendant approached Mr. Epps inside Charlie's Bar, and forcibly removed Mr. Epps from his seat and into the adjacent lot. Id., at 17. Mr. Epps attempted to flee but was chased by another man who pulled Mr. Epps toward the alleyway next to the bar. Id. Mr. Epps was then repeatedly beaten by more than two men— further supporting the Commonwealth's assertion that Mr. Epps was unable to adequately flee or defend and protect himself because of the size and strength of the Defendant and the other men. Id., at 27.

The Defendant's actions satisfied the second prong of *Alexander*, because the Defendant exhibited no restraint whatsoever to prevent him from escalating the attack. Contrarily, the Defendant willfully provoked, organized and directed others to beat Mr. Epps, and the attack instead worsened to one of grave public humiliation after Mr. Epps was stripped of his clothing and belongings and made to walk naked down Woodland Avenue. Notes of Testimony, 8/31/17 at 21-22.

The Defendant made statements prior to and during the attack that satisfy the fourth prong of the test in *Alexander*. The Defendant called Mr. Epps "a rat" and told him to "stop telling on people." Id., at 19. These statements made by the Defendant intensified the assailants' original purpose for the attack and served to further motivate and encourage beating Mr. Epps. A Snapchat video of the assault posted by the Codefendant, Mr. Evans, also revealed that the Defendant showed little to no remorse for his actions and role or regard for human dignity during the beating. The video demonstrates the Defendant's intent to inflict serious bodily injury on Mr. Epps through his recorded statements.

This Court finds that after viewing the testimony and evidence in a light most favorable to the Commonwealth, the evidence clearly established the requisite elements of the Conspiracy to Commit Aggravated Assault and Robbery charges.

**Intimidation of a Witness or Victim**

The Defendant also asserts in claim (c) that the evidence at trial was insufficient to establish intimidation of a witness or victim, since Mr. Epps was neither a victim or a witness in a prior criminal matter. and since there was no evidence that the assault upon him was intended to intimidate Mr. Epps from reporting the current assault upon him. The Commonwealth met its evidentiary burden in proving beyond a reasonable doubt that the Defendant intimidated Mr. Epps as a victim and witness to his own assault, pursuant to § 4952(a)(1):

> A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
> *(1)* Refrain from informing or reporting to any law enforcement officer, prosecuting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

Actual intimidation of a witness is not an essential element of the crime. The crime is committed if one, with the necessary mens rea, *"attempts"* to intimidate a witness or victim. *See* Commonwealth v. Collington, 419 Pa. Super. 538, 540, 615 A.2d 769, 770 (1992). While Mr. Epps was being severely beaten by the Defendant and his counterparts, Mr. Epps was repeatedly called "a rat" and told to "stop telling on people," demonstrating the Defendant's attempt to intimidate and instill fear into Mr. Epps. Notes of Testimony, 8/31/17 at 19.

This Court finds that the Defendant intimidated Mr. Epps in order to prevent Mr. Epps from reporting the assault against him on February 26, 2016 to law enforcement officials. Id., at 37-38. Mr. Epps asserted in his testimony that he was "scared at the time," when asked why he did not report the assault to police right away. Id., at 18. This Court plainly observed the fear and terror from Mr. Epps while present at the trial. Notes of Testimony, 1/12/18 at 17. After viewing the testimony and evidence in a light most favorable to the Commonwealth, the evidence clearly established the requisite elements of the Intimidation of a Witness or Victim charge.

### 2. *This Court Did Not Err in Grading Witness Intimidation as a First Degree Felony for Sentencing Purposes*

In claims (d) and (g), Defendant claims that this Court erred in sentencing him on intimidation of a witness as a first degree felony where the interrogatory completed by the jury graded the charge as a third degree felony.

The offense of intimidation of a witness is graded as a felony of the first degree if a felony of the first degree was charged in the case in which the actor sought to influence or initimidate a witness. 18 Pa. C.S.A. § 4952.

The Pennsylvania Supreme Court in Commonwealth v. Spruill, 80 A.3d 453 (Pa. 2013), held that an error in grading an offense concerns the underlying conviction rather than the legality of the sentence, and is therefore subject to waiver. Commonwealth v. Shamsud-Din, 995 A.2d

1224 (holding that an appellant failed to preserve for appellate review a claim that the trial court erred by convicting her of third-degree misdemeanor assault where appellant did not timely object to the trial court's consideration of that offense or to conviction immediately following the court's guilty verdict.); see also, Commonwealth v. Spruill, 105 A.3d 802 (Pa.Super., July 28, 2014) (memorandum opinion).

When delivering the verdict in this case, the jury foreman stated on the record that the most serious offense charged in the case in which the defendant intimidated a witness was *not* a felony in the first degree. Notes of Testimony, 11/1/17 at 21. This answer was clearly stated in error, as the offense charged in the case in which the Defendant intimidated Mr. Epps was a robbery as a felony in the first degree and the Defendant was found guilty on this charge. This admitted error on the record goes to the conviction and not to the legality of sentence. Therefore, Appellant should have objected to this Court's consideration of that offense or to the conviction immediately following the jury's guilty verdict.

### 3. This Court Properly Sentenced the Defendant Within its Discretion

The Defendant's claims (e) and (f) assert that this Court erred by imposing an excessive and unreasonable sentence to a concurrent 10-20 years in state custody for Robbery, and 10-20 years in state custody for Conspiracy to Commit Aggravated Assault. The Defendant also asserts that this court erred in sentencing him to a consecutive 10-20 years in state custody for Intimidation of a Witness or Victim. Further, the Defendant asserts in claim (h) that this Court improperly considered Defendant's failure to admit guilt as a "factor" in sentencing.

Under the standard set forth in 42 Pa.C.S.A. § 9781, Courts have applied statutory law by vacating sentences that are outside of the Sentencing Guidelines if they are 'unreasonable' or 'clearly unreasonable.' See Commonwealth. v. Mouzon, 812 A.2d 617, 625 (Pa. 2002).

§ 9721(b) of Pennsylvania's Sentencing Code states that a trial court must: "follow the general principle that the sentence imposed should call for confinement that is consistent with protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."

To find that a sentence is "clearly unreasonable," the appellant must state the reasons why their sentence raises a substantial question and is an abuse of discretion in violation of Pa.C.S.A. § 9781. Id. at 435. This Court echoes the decision in Commonwealth v. Hoag: "When reviewing the sentence for abuse of discretion, it is only when sentencing court goes outside guideline ranges of sentencing code that reviewing court will presume sentence imposed is not minimum sentence recommended by statute; recommended ranges within sentencing guidelines are minimum sentences consistent with requirements and concerns of the state, victims, and defendant. 42 Pa.C.S.A. § 9701 et seq." See Commonwealth v. Hoag, 445 Pa. Super. 455, 665 A.2d 1212 (1995).

It is also well settled that the statutory Sentencing Guidelines are solely advisory in nature and are only one factor among many that the court must consider when imposing a sentence. See Commonwealth v. Sessoms, 516 Pa. 365, 532 A.2d 775 (1987).

The Defendant was found guilty by a jury of Robbery, Conspiracy to Commit Aggravated Assault, and Intimidation of a Witness or Victim. The maximum sentence for Robbery is 20 years in state custody, and the Offense Gravity Score for this charge is 8. The maximum sentence for Conspiracy to Commit Aggravated Assault is 20 years in state custody, and the Offense Gravity Score for this charge is 7. The maximum sentence for Intimidation of a Witness or Victim is 20 years in state custody, and the Offense Gravity Score for this charge is 8. This court considered the Offense Gravity Scores and range of 84 to 102, the Defendant's prior

record score of 11, and determined that the Defendant was sentenced well within the sentencing guidelines to an aggregate 20-40 years in state custody.

This Court considered the Defendant's Pre-Sentence Investigation (PSI) Report and Psychiatric Reports prepared by the Probation Department and all relevant mitigating factors put forth by the Defendant.[1] At the sentencing hearing, this Court indicated an awareness of and an appreciation for the information contained in the reports regarding Defendant's character and background and weighed those factors when deciding and announcing Defendant's sentence. Notes of Testimony, 1/12/18, at 17. This Court's on-record statements incorporating the findings in the PSI and mental health reports are sufficient to explain the reasons for the sentence imposed, to demonstrate compliance with applicable sentencing laws and regulations, and to show that, in sentencing Defendant, this Court acted well within its discretion.
This Court carefully reviewed the Defendant's prior record score, offense gravity score and range, the facts in this trial, the video footage of the attack, the history and character of the Defendant, and the visible fear and terror from Mr. Epps during the trial. Id.

Specific aggravating factors considered in Defendant's sentence included the nature of the crime, the Defendant's prior criminal record, the importance of protecting the public from violence and the Defendant's failure to take responsibility for his crimes. The first aggravating factor that this Court cited was the nature of the crime, specifically that the assault took the form of a horrific physical beating by multiple people that resulted in the victim being stripped of his clothing and made to walk naked in the middle of the night along Woodland Avenue. Id. "When

---

[1] When the "sentencing court ha[s] the benefit of a presentence investigation report ("PSI"), [the Superior Court] can assume the sentencing court 'was aware of relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors." Commonwealth v. Moury, 992 A.2d 162, 171 (Pa. Super. 2010) (citations omitted). The PSI and Mental Health Reports in this case are attached to this Opinion.

an offense is carried out in a manner which makes it more egregious than is typical for the offense... the nature of the offense is a proper aggravating factor to consider. Commonwealth v. Hanson, 2004 PA Super 326, 856 A.2d 1254 (2004). As such, the nature of the crime was a proper aggravating factor to consider in sentencing.

Protection of the public may also be considered as an aggravating factor when fashioning a sentence. 42 Pa.C.S. § 9721(b). The Court acknowledged that the Defendant has been previously found guilty of a violent felony and noted that the violent nature of the Defendant's prior criminal history must be considered when factoring the protection of the public into its sentencing decision.

With regard to Defendant's failure to accept responsibility, this Court in its discretion properly considered his general behavior throughout the trial indicating a lack of remorse or accountability for his role in the attack against Mr. Epps as a consideration in sentencing. Notes of Testimony, 1/12/18, at 17.

After careful review of all factors, this Court finds that it has properly sentenced the Defendant within its discretion.

Conclusion

For the foregoing reasons, it is respectfully requested that the Trial Court's verdict and sentence be affirmed.

BY THIS COURT:

_____
Mia R. Perez, J.